IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KERYN PIPPINGER                      :        CIVIL ACTION
                                     :
            v.                       :
                                     :
BIMBO BAKERIES USA, INC.             :        NO.  24-2533

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                              September  30, 2024

In the Amended Complaint, Keryn Pippinger ("Plaintiff") alleges that she was sexually harassed at work by her supervisor, subjected to a hostile work environment, and retaliated against when she made complaints of sexual harassment.  Doc. 12.  Defendant has filed a motion to dismiss Count II of the Amended Complaint, which alleges quid pro quo sexual harassment.  Doc. 16-1.  Defendant contends that Plaintiff has failed to allege that her supervisor took a tangible employment action as a result of her refusal to submit to his sexual advances.  Plaintiff responds that she has alleged sufficient facts to support the quid pro quo sexual harassment claim.  Doc. 17.

Defendant's motion is governed by Federal Rule of Civil Procedure 12(b)(6), which provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Twombly, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. Garrett v. Wexford Health, 938 F.3d 69, 92 (3d Cir. 2019)

(quoting Iqbal, 556 U.S. at 678-79).

The Third Circuit has held that "unwelcome sexual advances, requests for sexual

favors, and other verbal or physical conduct of a sexual nature constitute [quid pro quo]

sexual harassment when (1) submission to such conduct is made either explicitly or

implicitly a term or condition of an individual's employment [or] (2) submission to or

rejection of such conduct by an individual is used as the basis for employment decisions

affecting such individual." Starnes v. Butler Cnty. Court of Common Pleas, 971 F.3d

416, 427 (3d Cir. 2020) (quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 27 (3d

Cir. 1997) (alterations in original). "To withstand a Rule 12(b)(6) motion, a plaintiff

alleging quid pro quo harassment must plead facts to show either (1) he/she submitted to

sexual advances based on the quid pro quo offer or threat or (2) a harasser took tangible

employment action based on refusal to submit to his/her sexual advances or demands, and

(3) the harasser had workplace authority sufficient to carry out the quid pro quo offer or

threat." Purnell v. City of Philadelphia, Civ. No. 20-3718, 2021 WL 3617161, at *2

(E.D. Pa. Aug. 16, 2021) (citing Cherisme v. AIDS Care Grp., Civ. No. 15-6420, 2016

WL 3997237, at *10 (E.D. Pa. July 26, 2016)).

In Plaintiff's allegations of quid pro quo discrimination, she asserts that her male

supervisor took the following actions against her for refusing his sexual advances:

(1) denying Plaintiff a supervisory position, (2) denying and/or sabotaging opportunities

for Plaintiff to join the corporate team in Horsham, PA, (3) denying and/or sabotaging opportunities for Plaintiff to work with a vender of Defendant, (4) denying Plaintiff a work schedule that better coincided with her parental responsibilities, and (5) denying Plaintiff days off work to which she would have been otherwise entitled.  Doc. 12 ¶ 148. Defendant argues that none of these allegations provides a viable basis for quid pro quo sexual harassment.

First, Defendant contends that Plaintiff's allegations regarding work schedule changes and days off do not constitute tangible employment actions.  Doc. 16-1 at 11-12. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see also Starnes, 971 F.3d at 427 (probation officer's allegations that she was denied an office, overtime opportunities, and the ability to go into the field and supervise others sufficiently alleged tangible employment actions).  In contrast, the Ellerth Court provided a number of examples of circumstances that do not constitute tangible employment actions.  524 U.S. at 761 (citing Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir. 1994) (a "bruised ego" is not enough); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties, or prestige insufficient); Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (reassignment to more inconvenient job insufficient)); see also Colston v. Cleveland Pub. Libr., 522 F. App'x 332, 339 (6th Cir. 2013) (for purposes of whether employer retaliated against plaintiff, "denial of time off

does not constitute an 'adverse employment action' because it did not materially change the terms and conditions of [the plaintiff's] employment").  I conclude that Plaintiff's alleged change in schedule and denial of days off are more akin to actions that were not found to constitute tangible employment actions for purposes of quid pro quo harassment, and that her claim cannot proceed as to these actions.

Next, with respect to Plaintiff's claims that her supervisor denied her career opportunities, Defendant contends that Plaintiff has offered nothing more than conclusory allegations and "[a]bsent averments establishing the factual predicate for such claims, the claims cannot survive a motion to dismiss."  Doc. 16-1 at 14.  Defendant relies on two cases in support of this argument.  In Sousa v. Amazon.com, Inc., the Third Circuit affirmed the district court's dismissal of a quid pro quo claim where the plaintiff alleged that, after she declined a transfer, a male colleague was offered the same transfer and offered a promotion if he accepted it.  No. 22-3043, 2023 WL 7486751, at *1, *4 (3d Cir. Nov. 13, 2023) (not precedential).  Under the circumstances, the court found Sousa's failure to allege anything about her qualifications or those of the male co-worker who received the promotion was fatal to her claim.  Id. at *4.  In Wang v. SLM Corp., the district court found Plaintiff's allegation that the harasser "implied that she would have a 'chance' at a promotion to a vague 'Director position' does not support Plaintiff's claim that Defendant's failure to promote Plaintiff to 'Director' was an adverse action taken because of Plaintiff's rejection of [the harasser's] advances."  Civ. No. 23-1240, 2024 WL 3444650, at *3 (D. Del. July 15, 2024).

Here, I agree with Defendant that Plaintiff's allegations of the denial of a supervisory position and the alleged sabotage of an opportunity to work with an outside vendor are insufficient to support the quid pro quo harassment claim.  Although Plaintiff alleges that her supervisor "said that one day he hoped to offer Plaintiff his management position," Doc. 12 ¶ 25, that he told her he could see her "going places in the bakery," id. ¶ 42, and said he was preparing her for a supervisor position, id. ¶ 44, there is no allegation that such a position opened or that Plaintiff applied for and was denied such position.[1]  Similarly, Plaintiff's allegation that she was approached by one of Defendant's contractors about the possibility of working for them directly, id. ¶ 59, is insufficient. Plaintiff has not alleged that she applied for the job or was actually under consideration for the position.  Like the plaintiff in Wang, the Amended Complaint does not specify that a position was available or if Plaintiff was qualified for such a position.  Plaintiff's allegations of a vague supervisory position and a possible position with an outside vendor are too speculative.

Finally, Defendant argues that Plaintiff's allegation regarding the corporate opportunity in Horsham is also insufficient to support her quid pro quo claim.  Doc. 16-1 at 14.  Plaintiff alleges that her supervisor's superior sent an email advising Plaintiff and her supervisor that Plaintiff would "make an excellent candidate to work at the corporate offices in Horsham, PA [and] stated that she had put in a good word for Plaintiff, and that they would be in contact."  Doc. 12 ¶ 57.  Plaintiff's supervisor then told Plaintiff "she

---

[1]In fact, Plaintiff alleges that the supervisor said "he would talk to higher-ups about creating the position."  Doc. 12 ¶ 44.

couldn't work for corporate [because] they would chew her up and spit her out."  Id. ¶ 58. Plaintiff contends that "[w]ithout [her supervisor's] support, the effort to promote Plaintiff to the corporate offices went no further."  Id.

I conclude that the alleged email from the superior is sufficient to support the inference that a corporate position existed for which Plaintiff was under consideration, but did not get, and therefore to survive the motion to dismiss.  "'[D]etailed pleading is not generally required' but the plausibility standard requires that [the] pleading show 'more than a sheer possibility that a defendant has acted unlawfully.'"  Polenik v. Yellen, Civ. No. 22-1691, 2024 WL 1466783, at *2 (M.D. Pa. Apr. 4, 2024) (quoting Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016)); see also Cherisme, 2016 WL 3997237, at *2 ("While the 'plausibility standard is not akin to a probability requirement,' . . . [the standard] asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting Iqbal, 556 U.S. at 678)).  The discovery process will give Plaintiff the opportunity to establish whether there was a corporate position available in Horsham and whether weight was given to her supervisor's lack of support in making a decision about that position.  See Glagola v. MacFann, 701 F. Supp.3d 274, 280 (W.D. Pa. 2023) (court must draw all reasonable inferences in the plaintiff's favor and unanswered questions should "be explored in discovery and resolved on summary judgment or at trial").

In sum, Plaintiff's claims of a change in schedule and denial of days off do not amount to tangible employment actions, and her claims of being denied a supervisory position and the opportunity to pursue employment with an outside vendor are too

speculative to support the quid pro quo harassment claim.  Plaintiff has stated a plausible quid pro quo harassment claim based on her allegations that her supervisor thwarted her transfer/promotion to the corporate headquarters in Horsham.

An appropriate Order follows.